1  S. Mark Varney, No. 121129
2  **CARROLL, BURDICK & McDONOUGH** LLP
   Attorneys at Law
   44 Montgomery Street, Suite 400
3  San Francisco, CA 94104
   Telephone:   415.989.5900
4  Facsimile:   415.989.0932
   Email:   mvarney@cbmlaw.com
5
   Attorneys for Defendant
6  Westbrook Technologies, Inc.

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        San Jose Division

11

12  INTERRA INFORMATION                    No. **C08 02737 RS**
    TECHNOLOGIES, INC., a California
13  corporation,                           **NOTICE OF REMOVAL OF ACTION UNDER
                                           28 U.S.C. SECTION 1441(A) BY
14                  Plaintiff,             DEFENDANT WESTBROOK
                                           TECHNOLOGIES, INC.**
15        v.
                                           Complaint Filed:   April 30, 2008
16  WESTBROOK TECHNOLOGIES,
    INC., et al.,
17
                    Defendant.
18

19

20  TO THE CLERK OF THE UNITED STATES DISTRICT COURT, NORTHERN

21  DISTRICT OF CALIFORNIA, SAN JOSE DIVISION; PLAINTIFF INTERRA

22  INFORMATION TECHNOLOGIES, INC.; AND PLAINTIFF'S COUNSEL OF

23  RECORD:

24        PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441, and

25  1446, defendant Westbrook Technologies, Inc. ("Westbrook"), hereby removes to this

26  Court the State court action described herein.  Removal is based on the existence of

27  federal diversity jurisdiction under 28 U.S.C. § 1332(a), because the parties to the action

28

1    are completely diverse and the matter in controversy exceeds the sum or value of

2    $75,000.00, exclusive of interests and costs.

3              Westbrook provides the following statement of the grounds for removal:

4        1.    This civil action was commenced and is pending in the Superior Court of

5    the State of California, Santa Clara County, a court located within this District, under

6    Docket Number 108CV111578. *See* 28 U.S.C. § 1441(a); N.D. Cal. Local R. 3-2(e).

7        2.    The Summons and Complaint ("Complaint") in this action, dated

8    April 30, 2008, were served upon Westbrook on or about May 1, 2008.

9        3.    Westbrook files this Notice of Removal within 30 days of service of the

10   Summons and Complaint.

11       4.    This Court has original jurisdiction of this action under the provisions of

12   28 U.S.C. § 1332(a)(1), because the parties to the action are citizens of different States

13   and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests

14   and costs.

15       5.    On information and belief, both at the time this action was filed and at the

16   time of removal, plaintiff Interra Information Technologies, Inc. was and is a corporation

17   existing under the laws of the State of California, with its headquarters and principal place

18   of business in San Jose, California. (Complaint, ¶ 1.) Accordingly, pursuant to 28 U.S.C.

19   § 1332(c)(1), Interra is a citizen of California for purposes of diversity jurisdiction under

20   28 U.S.C. § 1332(a).

21       6.    Both at the time this action was filed and at the time of removal,

22   Westbrook was and is incorporated under the laws of the State of Delaware, with its

23   headquarters and principal place of business in the State of Connecticut. Accordingly,

24   pursuant to 28 U.S.C. § 1332(c)(1), Westbrook is a citizen of Delaware and Connecticut

25   for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

26       7.    Citizenship of any of the putative "Doe" defendants is irrelevant for

27   purposes of removal. 28 U.S.C. § 1441(a) ("For purposes of removal . . . the citizenship

28   of defendants sued under fictitious names shall be disregarded."); *Soliman v. Philip*

NOTICE OF REMOVAL OF ACTION

1 | *Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002), *cert. denied*, 540 U.S. 814 (2003)

2 | (reiterating that citizenship of "several 'Doe' defendants" is disregarded for removal

3 | purposes pursuant to 28 U.S.C. § 1441(a)).

4 |      8.   Moreover, "John Doe" defendants need not join in a notice of removal.

5 | *Green v. America Online*, 318 F.3d 465, 470 (3d Cir. 2003), *cert. denied*, 540 U.S. 877

6 | ("[T]he general rule that all defendants must join in a notice of removal may be

7 | disregarded where, as here, the non-joining defendants are unknown."); *Fristo v.*

8 | *Reynolds Metals Co.*, 615 F.2d 1209 (9th Cir. 1980) ("[T]he unknown defendants sued as

9 | 'Does' need not be joined in a removal petition.").

10 |      9.   In light of the different citizenship of plaintiff Interra and defendant

11 | Westbrook, the only two named parties to this lawsuit, there is complete diversity within

12 | the meaning of 28 U.S.C. § 1332(a).

13 |      10.  The matter in controversy exceeds the sum of $75,000, exclusive of

14 | interest and costs. (See e.g. Complaint ¶¶ 9 – 15; 27).

15 |      11.  Under 28 U.S.C. § 1332 district courts have original jurisdiction of all

16 | civil actions where the matter in controversy exceeds the sum or value of $75,000,

17 | exclusive of interest and costs and is between citizens of different States.

18 |      12.  Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of

19 | which the district courts of the United States have original jurisdiction, may be removed

20 | by the defendant or the defendants, to the district court of the United States for the district

21 | and division embracing the place where such action is pending."

22 |      13.  Concurrent with the filing of this Notice, Westbrook will file a copy of

23 | this Notice of Removal with the Clerk of the Santa Clara County Superior Court.

24 |      14.  Pursuant to 28 U.S.C. § 1446, Westbrook files herewith copies of all

25 | process, pleadings, papers and orders that have been served upon it in the State court

26 | action (See Exhibit A).

27

28

1    15.    Wherefore, the defendant hereby gives notice of the removal of this case

2    from the Superior Court of California, County of Santa Clara to the United States District

3    Court for the Northern District of California, San Jose Division

4

5        Dated:  May 30, 2008

6                        Respectfully submitted,

7                        CARROLL, BURDICK & McDONOUGH LLP

8

9            By

10                        S. Mark Varney
              Attorneys for Defendant
11            Westbrook Technologies, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4/30/2008 16:09 FAX                                                                 @004

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
WESTBROOK TECHNOLOGIES, INC., and DOES 1 through 50, Inclusive.

**ENDORSED**

2008 APR 30  AM 9: 59

KIRI TORRE, CEO
SUPERIOR COURT OF CA.
CO. OF SANTA CLARA
BY_____ B. CHOPOFF ____DEPUTY

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
INTERRA INFORMATION TECHNOLOGIES, INC., a California corporation

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia. Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER<br>*(Número del Caso):*<br>**108-CV 111578** |
|---|---|

Superior Court of California, County of Santa Clara
191 N. First Street
San Jose, CA 95113

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael J. Ioannou    (408) 287-6262                B. CHOPOFF
Ropers, Majeski, Kohn & Bentley
80 N. First Street
San Jose, CA 95113

DATE:          APR 30 2008    Kiri Torre                              , Deputy
*(Fecha)*                     Chief Executive Officer/Clerk            *(Adjunto)*
                              *(Secretario)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

| [SEAL] | 1. ☐ as an individual defendant.<br>2. ☐ as the person sued under the fictitious name of *(specify):*<br><br>3. ☒ on behalf of *(specify):* WESTBROOK TECHNOLOGIES, INC.<br>under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)<br>          ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)<br>          ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)<br>          ☐ other *(specify):*<br>4. ☐ by personal delivery on *(date):* |
|---|---|

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc.
www.USCourtForms.com

4/30/2008 16:08 FAX              ☑002

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Michael J. Ioannou (SBN 95208)
Ropers, Majeski, Kohn & Bentley
80 N. First Street
San Jose, CA 95113
  TELEPHONE NO: (408) 287-6262      FAX NO.: (408) 918-4501
ATTORNEY FOR *(Name):* Interra Information Technologies, Inc.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara
  STREET ADDRESS: 191 N. First Street
  MAILING ADDRESS:
  CITY AND ZIP CODE: San Jose 95113
  BRANCH NAME: Downtown

CASE NAME: Interra Information Technologies, Inc. vs. Westbrook Technologies,
Inc. and Does 1 through 50, inclusive

FOR COURT USE ONLY

**ENDORSED**

2008 APR 30 AM 9: 59

KIRI TORRE, CEO
SUPERIOR COURT OF CA.
CO. OF SANTA CLARA
BY _____B. CHOPOFF_____ DEPUTY

CASE NUMBER: **108CV 111578**

| CIVIL CASE COVER SHEET | Complex Case Designation | |
|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) | ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) |

JUDGE:
DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☒ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
  a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
  b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
  c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☒ monetary b. ☒ nonmonetary; declaratory or injunctive relief    c. ☐ punitive
4. Number of causes of action *(specify):* 6
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: April 28, 2008

Michael J. Ioannou
  (TYPE OR PRINT NAME)          ► _____ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

1/30/2008 16:08 FAX          ☑003

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
   Damage/Wrongful Death
Uninsured Motorist (46) *(if the
   case involves an uninsured
   motorist claim subject to
   arbitration, check this item
   instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/
     Wrongful Death
Product Liability *(not asbestos or
   toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice—
     Physicians & Surgeons
   Other Professional Health Care
     Malpractice
Other PI/PD/WD (23)
   Premises Liability *(e.g., slip
     and fall)*
   Intentional Bodily Injury/PD/WD
     *(e.g., assault, vandalism)*
   Intentional Infliction of
     Emotional Distress
   Negligent Infliction of
     Emotional Distress
   Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
   Practice (07)
Civil Rights *(e.g., discrimination,
   false arrest) (not civil
   harassment)* (08)
Defamation *(e.g., slander, libel)*
   (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice
     *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36) Other
   Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease
     Contract *(not unlawful detainer
     or wrongful eviction)*
   Contract/Warranty Breach–Seller
     Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/
     Warranty
   Other Breach of Contract/Warranty
Collections *(e.g., money owed, open
   book account)* (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections
     Case
Insurance Coverage *(not provisionally
   complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
   Condemnation (14)
Wrongful Eviction (33)
Other Real Property *(e.g., quiet title)* (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent
     domain, landlord/tenant, or
     foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
   drugs, check this item; otherwise,
   report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court
     Case Matter
   Writ–Other Limited Court Case
     Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor
     Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
   *(arising from provisionally complex
   case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of
     County)
   Confession of Judgment *(non-
     domestic relations)*
   Sister State Judgment
   Administrative Agency Award
     *(not unpaid taxes)*
   Petition/Certification of Entry of
     Judgment on Unpaid Taxes
   Other Enforcement of Judgment
     Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
   above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-
     harassment)*
   Mechanics Lien
   Other Commercial Complaint
     Case *(non-tort/non-complex)*
   Other Civil Complaint
     *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
   Governance (21)
Other Petition *(not specified
   above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult
     Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late
     Claim
   Other Civil Petition

**CIVIL CASE COVER SHEET**

CM-010 [Rev. July 1, 2007]

American LegalNet, Inc.
www.FormsWorkflow.com

4/30/2008 16:14 FAX

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION SHEET / CIVIL DIVISION

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

*What is ADR?*

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

*What are the advantages of choosing ADR instead of litigation?*

ADR can have a number of advantages over litigation:

< **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

< **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

< **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

< **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

< **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

*What are the main forms of ADR offered by the Court?*

< Mediation is an informal, confidential process in which a neutral party (the mediator) assists the parties in understanding their own interests, the interests of the other parties, and the practical and legal realities they all face. The mediator then helps the parties to explore options and arrive at a mutually acceptable resolution of the dispute. The mediator does not decide the dispute. The parties do.

< Mediation may be appropriate when:
    < The parties want a non-adversary procedure
    < The parties have a continuing business or personal relationship
    < Communication problems are interfering with a resolution
    < There is an emotional element involved
    < The parties are interested in an injunction, consent decree, or other form of equitable relief

*–over–*

CV-6003 REV 5/03

4/30/2008 16:15 FAX                                                          ☐ 038

Arbitration is a normally informal process in which the neutral (the arbitrator) decides the dispute after hearing the evidence and arguments of the parties. The parties can agree to binding or non-binding arbitration. Binding arbitration is designed to give the parties a resolution of their dispute when they cannot agree by themselves or with a mediator. If the arbitration is non-binding, any party can reject the arbitrator's decision and request a trial.

Arbitration may be appropriate when:
- The action is for personal injury, property damage, or breach of contract.
- Only monetary damages are sought
- Witness testimony, under oath, is desired
- An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

Neutral evaluation is an informal process in which a neutral party (the evaluator) reviews the case with counsel and gives a non-binding assessment of the strengths and weaknesses on each side and the likely outcome. The neutral can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
- The parties are far apart in their view of the law or value of the case
- The case involves a technical issue in which the evaluator has expertise
- Case planning assistance would be helpful and would save legal fees and costs
- The parties are interested in an injunction, consent decree, or other form of equitable relief

Special masters and referees are neutral parties who may be appointed by the court to obtain information, or to make specific fact findings that may lead to a resolution of a dispute.

Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

Settlement conferences are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.

Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

*What kind of disputes can be resolved by ADR?*

Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; and sports, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, for information about ADR procedures, or for other questions about ADR?*

Contact:
Santa Clara County Superior Court          Santa Clara County DRPA Coordinator
ADR Administrator                          408-792-2704
408-882-2530

---

ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET/ CIVIL DIVISION

CV-5003 REV 5/08

1/30/2008 16:09 FAX                                                          @005

1   MICHAEL J. IOANNOU (SBN 95208)          **ENDORSED**
    KIMBERLY F. WHITFIELD (SBN 179717)
2   ROPERS, MAJESKI, KOHN & BENTLEY    2008 APR 30 AM 9: 58
    80 North First Street
3   San Jose, CA 95113                KIRI TORRE, CEO
    Telephone: (408) 287-6262        SUPERIOR COURT OF CA.
4   Facsimile: (408) 918-4501          CO. OF SANTA CLARA
    Email: mioannou@rmkb.com;       BY_____B. CHUROFF
5   kwhitfield@rmkb.com

                               ENDORSED  Santa Clara
6   Attorneys for Plaintiff                   04/30/08   10:07am
    INTERRA INFORMATION TECHNOLOGIES,       Kiri Torre
7   INC.                          Chief Executive Offic
                                 By: bettyc DISCIV0101
8         SUPERIOR COURT OF THE STATE OF CALIFORNIA R4200800044171
                                      CC       $320.00
9            COUNTY OF SANTA CLARA        TL       $320.00
                                     Case: 1-08-CV-111578
10              UNLIMITED JURISDICTION

11

12                              CASE NO. **108CV111578**

13   INTERRA INFORMATION
    TECHNOLOGIES, INC., a California     **Complaint for Breach of Written Contract,**
14   corporation,                      **Breach of the Implied Covenant of Good**
                                **Faith and Fair Dealing, Services Provided,**
15             Plaintiff,            **Account Stated, Quantum Meruit and**
                                  **Declaratory Relief**
16       v.

17   WESTBROOK TECHNOLOGIES, INC.,
    and DOES 1 through 50, inclusive,
18

19            Defendants.

20       Plaintiff INTERRA INFORMATION TECHNOLOGIES, INC. ("INTERRA IT" or

21   "Plaintiff") states:

22                    **JURISDICTION AND VENUE**

23        1.     INTERRA IT is a California corporation with its principal place of business

24   located at 2001 Gateway Place, Suite 670W, San Jose, County of Santa Clara, California, and is

25   in the business of, among other things, providing specialized custom computer engineering,

26   consulting services, and software product development.

27        2.     INTERRA IT alleges on information and belief that Defendant WESTBROOK

28   TECHNOLOGIES, INC. ("WESTBROOK") is a Delaware corporation, qualified to do business

    RCI/5111864.1/NB                     - 1 -
                          COMPLAINT FOR DAMAGES

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

4/30/2008 16:09 FAX                                                          ☒006

1    in the State of California, with its principal place of business at 22 Summit Place, Branford,

2    Connecticut 06405.

3           3.      INTERRA IT is ignorant of the true names and capacities of Defendants sued

4    herein as DOES 1 through 50, inclusive, and therefore sues said Defendants by such fictitious

5    names. INTERRA IT will amend this Complaint to allege their true names and capacities when

6    ascertained. INTERRA IT is informed and believes and thereon alleges that each of the

7    fictitiously named Defendants is responsible in some manner for the occurrence herein alleged,

8    and that the damages as herein alleged were proximately caused by said Defendants, and each of

9    them. INTERRA IT is informed and believes and thereon alleges that Defendants, and each of

10   them, were at all times herein mentioned the agents of their co-defendants, and in doing the things

11   hereinafter alleged, were acting in part within the course and scope of said agency and with the

12   permission and consent of their co-defendants, and each of them.

13          4.      Venue and jurisdiction are proper in the County of Santa Clara, State of California,

14   because Plaintiff INTERRA IT is headquartered in the City of San Jose, County of Santa Clara,

15   with its offices located at 2001 Gateway Place, Suite 670W, San Jose, California. Furthermore,

16   the written Agreement that is the subject of this litigation was entered into and was substantially

17   performed in the County of Santa Clara. Said written Agreement expressly provides that the

18   Agreement shall be governed by the laws of the State of California, and shall be subject to the

19   exclusive jurisdiction and venue of the State and Federal Courts of Santa Clara County,

20   California; the jurisdiction of which is expressly agreed and consented to by the parties.

21          5.      Effective January 15, 2004, INTERRA IT and WESTBROOK entered into a

22   written master Professional Service Agreement (the "Master Agreement"), by which INTERRA

23   IT agreed to provide professional development, implementation and consulting services,

24   including, but not limited to, the maintenance, enhancement and development of software being

25   used or developed by WESTBROOK. A true and correct copy of the Professional Services

26   Agreement is attached hereto as Exhibit "1" and incorporated herein by reference.

27          6.      Pursuant to the Master Agreement, INTERRA IT initially provided professional

28   consulting services for WESTBROOK and WESTBROOK Projects on a time-and-materials basis

RC1/5111864.1/NB                          - 2 -

**COMPLAINT FOR DAMAGES**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

4/30/2008 16:09 FAX                                                                            @007

1   in accordance with the fee schedule (Statement of Work-1 ["SOW-1"]) set forth in Schedule A to

2   Exhibit "1."

3        7.      Pursuant and subject to the terms of the Master Agreement, INTERRA IT entered

4   into a further time-and-materials project and Statement of Work for the Fortis.Net and Fortis SOA

5   Project for professional consulting services for the design and development of Fortis SOA

6   functionality. A true and correct copy of the Statement of Work for the Fortis.Net and Fortis

7   SOA Project is attached hereto as Exhibit "2" (hereinafter "SOW-2") and incorporated herein by

8   reference.

9        8.      Pursuant to the terms of the Master Agreement and SOW-2, the parties agreed that

10  the compensation for the INTERRA IT consultants dedicated to the WESTBROOK projects

11  would be based on time and materials. Pursuant to said Master Agreement, INTERRA IT

12  consultants were to be paid based on a forty-hour (40-hour) work week, invoicing once a month,

13  with payment due within thirty (30) days.  (Exhibit "2.")

14       9.      On or about February 5, 2007, INTERRA IT sent WESTBROOK invoice number

15  8451 for services rendered from January 1, 2007 to January 31, 2007 ("January invoice"). The

16  balance owing on the January invoice is $31,664.70. Pursuant to the parties' agreement, the

17  invoices are due within thirty (30) days of the invoice date. Plaintiff never received payment for

18  the January invoice. True and correct copies of all outstanding invoices, including the January

19  invoice, are attached collectively hereto as Exhibit "3."

20       10.     On or about February 28, 2007, INTERRA IT sent WESTBROOK invoice number

21  8586 for services rendered from February 1, 2007 to February 28, 2007 ("February invoice"). A

22  true and correct copy of the February invoice is attached hereto as the collective Exhibit "3." The

23  balance owing on this invoice is $26,560.80. Pursuant to the parties' agreement, the invoices are

24  due within thirty (30) days of the invoice date. Plaintiff never received payment for the February

25  invoice.

26       11.     On or about March 31, 2007, INTERRA IT sent WESTBROOK invoice number

27  8762 for services rendered from March 1, 2007 to March 31, 2007 ("March invoice"). A true and

28  correct copy of the March invoice is attached hereto as the collective Exhibit "3." The balance

RC1/5111864.1/NB                           - 3 -

COMPLAINT FOR DAMAGES

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

4/30/2008 16:10 FAX                                                    ☒ 008

1    owing on this invoice is $33,264. Pursuant to the parties' agreement, the invoices are due within

2    thirty (30) days of the invoice date. Plaintiff never received payment for the March invoice.

3          12.      On or about April 30, 2007, INTERRA IT sent WESTBROOK invoice number

4    8931 for services rendered from April 1, 2007 to April 31, 2007 ("April invoice"). A true and

5    correct copy of the April invoice is attached hereto as the collective Exhibit "3." The balance

6    owing on this invoice is $31,752. Pursuant to the parties' agreement, the invoices are due within

7    thirty (30) days of the invoice date. Plaintiff never received payment for the April invoice.

8          13.      On or about May 31, 2007, INTERRA IT sent WESTBROOK invoice number

9    9101 for services rendered from May 1, 2007 to May 31, 2007 ("May invoice"). A true and

10   correct copy of the May invoice is attached hereto as the collective Exhibit "3." The balance

11   owing on this invoice is $34,776. Pursuant to the parties' agreement, the invoices are due within

12   thirty (30) days of the invoice date. Plaintiff never received payment for the May invoice.

13         14.      On or about July 17, 2007, Plaintiff sent WESTBROOK invoice number 9378 for

14   services rendered from June 1, 2007 to June 33, 2007 ("June invoice"). A true and correct copy

15   of the June invoice is attached hereto as the collective Exhibit "3." The balance owing on this

16   invoice is $31,752. Pursuant to the parties' agreement, the invoices are due within thirty (30)

17   days of the invoice date. Plaintiff never received payment for the June invoice.

18         15.      On or about July 31, 2007, INTERRA IT sent WESTBROOK invoice number

19   9487 for services rendered from July 1, 2007 to July 31, 2007 ("July invoice"). A true and

20   correct copy of the July invoice is attached hereto as the collective Exhibit "3." The balance

21   owing on this invoice is $33,264. Pursuant to the parties' agreement, the invoices are due within

22   thirty (30) days of the invoice date. Plaintiff never received payment for the July invoice.

23         16.      Throughout the performance by INTERRA IT of the WESTBROOK Projects,

24   including the performance of the Fortis.Net and Fortis SOA Project, WESTBROOK continuously

25   changed its specifications and requested substantial additional functionality which Plaintiff and

26   WESTBROOK expressly understood was part of the Master Agreement and SOW-2 previously

27   entered. As a result, significant additional features were added to the functionality of the

28   deliverables throughout 2007, substantially adding to the value of the Fortis.Net and Fortis SOA

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

RCI/5111864.1/NB

- 4 -

4/30/2008 16:10 FAX                                                      @009

1    Project.

2         17.    Plaintiff INTERRA IT fully performed all conditions, covenants and promises

3    required by INTERRA IT in accordance with the terms of the Master Agreement and SOW-2,

4    including, but not limited to, the additional functionality requests by WESTBROOK. INTERRA

5    IT provided all of the deliverables for acceptance testing by WESTBROOK, including 10% of the

6    source code which contains the new, added functionality specifications requested by

7    WESTBROOK in 2007. Despite having received the benefit of the work performed by

8    INTERRA IT consultants, WESTBROOK began defaulting on invoices submitted by INTERRA

9    IT from January 2007 onwards, and since then, has failed and refused to pay any and all amounts

10   due and outstanding.

11        18.    On or about September 7, 2007, via electronic mail, WESTBROOK's President

12   and CEO, Paul Lord, sent a defective Notice of Termination of the subject Master Agreement,

13   failing to comply with Section 7 of the Master Agreement.

14        19.    On or about September 13, 2007, Counsel for INTERRA IT sent WESTBROOK a

15   letter demanding payment for all outstanding sums. On or about September 20, 2007, President

16   and CEO, Paul Lord, on behalf of WESTBROOK, advised counsel for INTERRA IT that

17   WESTBROOK disputed the sums currently due and owing for professional and software and

18   design consulting services rendered, claiming that INTERRA IT's software development work

19   does not meet standards of performance. From the effective date of the Master Agreement and

20   SOW-2 until approximately December 2006, Paul Lord, CEO of Defendant WESTBROOK, was

21   a member of the Board of Directors of Plaintiff INTERRA IT and, as such, should have disclosed

22   any claims that the INTERRA IT software development work was purportedly not meeting

23   standards of performance.

24        20.    As of the date of this Complaint, WESTBROOK has refused to make current its

25   debt to INTERRA IT.

26        21.    Defendant WESTBROOK has been unjustly enriched by its failure to pay for

27   services rendered pursuant to the terms of the Master Agreement and SOW-2, as well as for the

28   substantial work performed by INTERRA IT consultants at the request of WESTBROOOK for

RCI/5111864.1/NB                           - 5 -

COMPLAINT FOR DAMAGES

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    the significant additional software functionalities developed, adding to the functionality of the

2    deliverables throughout 2007, and thereby substantially adding to the value of the Project under

3    the Master Agreement and SOW-2.

4        22.    The intellectual property created and developed by INTERRA IT throughout 2007

5    embodied in such additional valuable software functionalities provided at the request of

6    WESTBROOK in 2007 were not transferred or assigned to Defendants, or any of them since

7    Defendants dispute that INTERRA IT performed such work under the terms of the Master

8    Agreement and SOW-2 claiming that all development work was based on a fixed fee, for

9    functions created before December 2006 pursuant to the Master Agreement and SOW-2, and that

10    all work performed in 2007 was only corrective work for purported defective software

11    development created before December 2006 whereas INTERRA IT claims that the Master

12    Agreement and SOW-2 provide for time-and-materials payment for all development work,

13    including additional valuable software functionalities added in 2007 at the specific request of

14    WESTBROOK. As such, INTERRA IT is informed and believes, and thereon alleges, that any

15    source code being used by Defendants that resulted from INTERRA IT's software development

16    work created in 2007 to add significant valuable additional functionalities is owned by INTERRA

17    IT and is not corrective work for pre-December 2006 software development.

18                         **FIRST CAUSE OF ACTION**
                               **(Breach of Contract)**

19       **(Against Defendants WESTBROOK and Does 1-50, Inclusive)**

20        23.    INTERRA IT incorporates by reference paragraphs 1 through 22, inclusive, as

21    though fully set forth herein.

22        24.    Pursuant to the written Master Agreement and SOW-2, INTERRA IT agreed to

23    perform the professional software consulting and design development described hereinabove,

24    including, but not limited to, the maintenance, enhancement and development of software being

25    used or developed by WESTBROOK, as well as the professional consulting services for the

26    design and development of Fortis SOA functionality, including significant additional valuable

27    functionalities developed by INTERRA IT consultants at the request of WESTBROOK, which

28    substantially added to the functionality of the deliverables throughout 2007. In consideration for

RCI/5111164.1/NB

- 6 -

4/30/2008 16:10 FAX

1    the services performed, WESTBROOK agreed to pay INTERRA IT at the mutually agreed-upon

2    rates expressed in the INTERRA IT invoices. True and correct copies of the unpaid invoices are

3    collectively attached hereto as Exhibit "3" and incorporated herein by reference.

4        25.    INTERRA IT fully performed all conditions, covenants and promises required on

5    its part to be performed in accordance with the terms and conditions of the parties' Master

6    Agreement and SOW-2, or has been excused from non-performance due to the conduct and non-

7    performance of Defendant WESTBROOK.

8        26.    In violation of its promises and obligations, WESTBROOK breached said Master

9    Agreement and SOW-2 and obligations by failing to pay for the amounts due and owing for the

10   professional consulting services provided and invoiced as provided for above. Although Plaintiff

11   has repeatedly requested that WESTBROOK perform the Agreement, said Defendant has failed

12   and refuses. Despite its failure to pay for the professional services, WESTBROOK continues to

13   derive a benefit from the professional software development performed by INTERRA IT.

14       27.    As part of the Master Agreement and SOW-2, Defendant agreed to pay to Plaintiff

15   one-and-one-half percent (1½%) per month on the outstanding balance of any fees or expenses

16   not paid within thirty (30) days of the date of the invoice. Defendants are further indebted to

17   Plaintiff for these amounts. There is now due and owing to the Plaintiff the sum of $252,906.31

18   which includes interest through December 31, 2007, and which continues to accrue.

19       28.    As a direct and proximate result of the conduct of WESTBROOK, INTERRA IT

20   has been damaged, as of December 31, 2007, in the amount of $252,906.31 (TWO HUNDRED

21   FIFTY-TWO THOUSAND NINE HUNDRED SIX DOLLARS AND THIRTY-ONE CENTS),

22   exclusive of the interest which continues to accrue after December 31, 2007, until the final

23   resolution of this matter.

24       29.    As part of the Master Agreement and SOW-2, Defendant agreed to pay to Plaintiff

25   all costs incurred by INTERRA IT in connection with any claim made by INTERRA IT in order

26   to recover payment of Defendant's account, including, without limitation, all professional fees

27   and legal costs. Plaintiff has been compelled to incur attorneys' fees and costs to collect the sums

28   due from Defendants and Plaintiff requests an award of reasonable attorneys' fees and costs.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

- 7 -

RC1/5111864.1/NB

1    WHEREFORE, Plaintiff prays for judgment against Defendant(s), and each of them, as

2    hereinafter set forth.

3                        **SECOND CAUSE OF ACTION**
                (Breach of the Implied Covenant of Good Faith and Fair Dealing)
4                  (Against Defendants WESTBROOK and Does 1-50, Inclusive)

5        30.    INTERRA IT incorporates by reference paragraphs 1 through 29, inclusive, as

6    though fully set forth herein.

7        31.    Implied in the Master Agreement and SOW-2 between the parties, as there is in

8    every agreement, was a covenant by Defendant(s) and each of them, that Defendant(s) would act

9    in good faith and deal fairly with INTERRA IT and would do nothing to deprive INTERRA IT of

10   the benefits of said Agreement. Defendant WESTBROOK has breached that covenant by failing

11   to deal in good faith by, among other things: (1) refusing to pay for INTERRA IT's consulting

12   services, which were performed by INTERRA IT and accepted by WESTBROOK; (2) making

13   illusory promises about its intent to become current on outstanding amounts owed; (3) making

14   illusory promises about working in good faith to resolve any disputes or misunderstandings

15   between the parties; and (4) making illusory promises about paying INTERRA IT for new

16   functionalities added after January 2007 to the development of Fortis.Net and Fortis SOA Project

17   when, in fact, WESTBROOK had no intention of doing so.

18       32.    INTERRA IT fully performed all conditions, covenants and promises required by

19   it on its part to be performed in accordance with the terms and conditions of the parties'

20   Agreement, or has been excused from non-performance due to the conduct and non-performance

21   of WESTBROOK.

22       33.    As a direct and proximate result of the conduct of WESTBROOK, INTERRA IT

23   has been damaged, as of December 31, 2007, in the amount of $252,906.31 (TWO HUNDRED

24   FIFTY-TWO THOUSAND NINE HUNDRED SIX DOLLARS AND THIRTY-ONE CENTS),

25   exclusive of the interest which continues to accrue after December 31, 2007, until the final

26   resolution of this matter.

27       WHEREFORE, INTERRA IT prays for judgment against Defendants, and each of them,

28   as hereinafter set forth.

RC1/5 11864.1/NB                                - 8 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

**THIRD CAUSE OF ACTION**
**(Common Count for Services Provided)**
**(Against Defendants WESTBROOK and Does 1-50, Inclusive)**

34.    INTERRA IT incorporates by reference paragraphs 1 through 33, inclusive, as though fully set forth herein.

35.    Within the past twenty-four (24) months, Defendants, and each of them, became indebted to INTERRA IT for work, labor and services performed by INTERRA IT at the special request of WESTBROOK, who agreed to pay such sums totaling $252,906.31 (TWO HUNDRED FIFTY-TWO THOUSAND NINE NUNDRED SIX DOLLARS AND THIRTY-ONE CENTS).

36.    Neither the whole nor any part of the above sum has been paid, although demands for these amounts have been made.  There is due and owing the amount of $252, 906.31 (TWO HUNDRED FIFTY-TWO THOUSAND NINE HUNDRED SIX DOLLARS AND THIRTY-ONE CENTS) as of December 31, 2007, exclusive of the interest which continues to accrue after December 31, 2007, until the final resolution of this matter.

WHEREFORE, INTERRA IT prays for judgment against Defendants, and each of them, as hereinafter set forth.

**FOURTH CAUSE OF ACTION**
**(Account Stated)**
**(Against Defendants WESTBROOK and Does 1-50, Inclusive)**

37.    INTERRA IT incorporates by reference paragraphs 1 through 36, inclusive, as though fully set forth herein.

38.    Commencing on or about January 2007, accounts were stated in writing by and between INTERRA IT and WESTBROOK, and on such statements, a total balance of $252,906.31 (TWO HUNDRED FIFTY-TWO THOUSAND NINE NUNDRED SIX DOLLARS AND THIRTY-ONE *CENTS*), including interest of as December 31, 2007, was found to be due and owing to INTERRA IT from WESTBROOK, which amount continues to accrue until the final resolution of this matter.

39.    Although demanded by INTERRA IT of WESTBROOK, WESTBROOK has

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

- 9 -

1    failed to pay the amounts found due and owing to INTERRA IT.

2    WHEREFORE, INTERRA IT prays for judgment against Defendants, and each of them,

3    as hereinafter set forth.

### FIFTH CAUSE OF ACTION
### (Quantum Meruit)
### (Against Defendants WESTBROOK and Does 1-50, Inclusive)

6    40.    INTERRA IT incorporates by reference paragraphs 1 through 39, inclusive, as

7    though fully set forth herein.

8    41.    From January 2007 until July 31, 2007, INTERRA IT performed software

9    development and professional consulting services for which INTERRA IT has not been fully

10   compensated. WESTBROOK knew that these services were being provided and approved and

11   accepted the same and further promised to pay their reasonable value. Further, WESTBROOK

12   used and enjoyed the services provided by INTERRA IT, and continues to do so.

13   42.    Although demanded by INTERRA IT, the fair and reasonable value of INTERRA

14   IT's services has not been paid.

15   43.    The remaining balance representing the fair and reasonable value of the services

16   provided to Defendant(s) is $252,906.31 (TWO HUNDRED FIFTY-TWO THOUSAND NINE

17   NUNDRED SIX DOLLARS AND THIRTY-ONE CENTS), exclusive of the interest accruing

18   after December 31, 2007.

19   WHEREFORE, INTERRA IT prays for judgment against Defendants, and each of them,

20   as hereinafter set forth.

### SIXTH CAUSE OF ACTION
### (Declaratory Relief)
### (As Against Defendants WESTBROOK and Does 1-50, Inclusive)

23   44.    INTERRA IT incorporates by reference paragraphs 1 through 43, inclusive, as

24   though fully set forth herein.

25   45.    INTERRA IT alleges that, as a result of the substantial work and services provided

26   by INTERRA IT pursuant to the Master Agreement and SOW-2, as well as the substantial work

27   and services performed by INTERRA IT consultants at the request of WESTBROOOK for the

28

- 10 -

RC1/5111864.1/NB

COMPLAINT FOR DAMAGES

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    significant additional functionalities developed with regard to the functionality of the Fortis.Net

2    and Fortis SOA Project deliverables throughout 2007, valuable intellectual property was

3    developed in the form of source code for software, title to which remains with INTERRA IT.

4    Title to said intellectual property was not assigned or transferred to Defendants, or any of them,

5    as title to said intellectual property created will not pass, until and unless, full payment for

6    services is made since Defendants, and each of them, claim none of the deliverables under the

7    Fortis.Net and Fortis SOA Project created in 2007 was for any new functionalities, but were only

8    to correct past source code created and developed before December 2006.

9

10        46.        INTERRA IT is informed and believes and thereon alleges, that said intellectual

11    property in the form of software developed in 2007 was not sold and/or transferred to Defendant

12    WESTBROOK and Does 1 through 50, inclusive, and is now being improperly used by said

13    Defendants under a wrongful claim of ownership.

14

15        47.        An actual controversy has arisen and now exists between INTERRA IT and

16    Defendants, and each of them, concerning their respective rights with regard to this intellectual

17    property. INTERRA IT contends that it owns said intellectual property developed for

18    WESTBROOK in 2007 because title never passed to WESTBROOK under the Master

19    Agreement and SOW-2, under the Project, or by operation of law since WESTBROOK claims no

20    intellectual property was created in 2007. The intellectual property created and developed by

21    INTERRA IT throughout 2007 embodied in such additional functionalities provided at the

22    request of WESTBROOK in 2007 were not transferred or assigned to Defendants, or any of them

23    since Defendants dispute that INTERRA IT performed such work under the terms of the Master

24    Agreement and SOW-2 claiming that all development work was based on a fixed fee for

25    functions created before December 2006 pursuant to the Master Agreement and SOW-2 and that

26    all work performed in 2007 was only corrective work for purported defective software

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

RCI/5111864.1/NB                                    - 11 -

COMPLAINT FOR DAMAGES

1   development created before December 2006 whereas INTERRA IT claims that the Master

2   Agreement and SOW-2 provide for time-and-materials payment for all development work

3   including additional valuable functionalities added in 2007 at the request of WESTBROOK. As

4   such, INTERRA IT is informed and believes, and thereon alleges, that any source code being

5   used by Defendants that resulted from INTERRA IT's software development work created in

6   2007 to add additional functionalities is owned by INTERRA IT and is not corrective work for

7

8   pre-December 2006 software development.

9       48.    INTERRA IT desires a judicial determination of its rights and duties, and a

10  declaration as to ownership of the copyrighted material in question.

11      49.    A judicial declaration is necessary and appropriate at this time and under these

12  circumstances in order for INTERRA IT to ascertain its rights and duties.

13      50.    Substantial detriment and damage has been sustained by INTERRA IT in that it is

14

15  owed $252,906.31 (TWO HUNDRED FIFTY-TWO THOUSAND NINE NUNDRED SIX

16  DOLLARS AND THIRTY-ONE CENTS), with interest continuing to accrue on each invoice.

17      WHEREFORE, INTERRA IT prays for judgment against Defendants, and each of them,

18  as hereinafter set forth:

19                              **PRAYER**

20

21      WHEREFORE, INTERRA IT prays for judgment against Defendants, and each of them,

22  as follows:

23  **As to the First, Second, Third and Fourth Causes of Action:**

24      A.    For compensatory damages according to proof;

25      B.    For interest at the rate one-and-one-half (1½%) from thirty (30) days from the date

26  of each invoice;

27      C.    For reasonable attorneys' fees and costs incurred in the suit herein; and

28      D.    For such other relief as the Court may deem just and proper.

RCI/5111864.1/NB

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

**As to the Fifth Cause of Action:**

A.    For compensatory damages in an amount according to proof at trial;

B.    Further damages in an amount as yet unascertained;

C.    For interest according to proof;

D.    For reasonable attorneys' fees and costs incurred in the suit herein; and

E.    For such other and further relief as the Court may deem just and proper.

**As to the Sixth Cause of Action:**

A.    For a declaration that INTERRA IT owns the source code and other intellectual property for software developed in 2007 for WESTBROOK and one or more of the other Defendants or that such software development work created in 2007 is owned by WESTBROOK and that the damages claimed arising out of the invoices billed for such additional functionalities added in 2007 should be paid to INTERRA IT; and

B.    For such other and further relief as the Court may deem just and proper.

Dated: April 28, 2008

                            ROPERS, MAJESKI, KOHN & BENTLEY

                            By:
                                MICHAEL J. IOANNOU
                                KIMBERLY F. WHITFIELD
                                Attorneys for Plaintiff
                                INTERRA INFORMATION
                                TECHNOLOGIES, INC.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

RCI/S111864.1/NB

COMPLAINT FOR DAMAGES

# PROFESSIONAL SERVICES AGREEMENT

This PROFESSIONAL SERVICES AGREEMENT (this "Agreement") is entered into as of January 15, 2004 (the "Effective Date") by and between Westbrook Technologies, Inc., with offices at 22 Summit Place, Branford, CT 06405 ("Customer"), and Interra Information Technologies, Inc, with offices at 2001 Gateway Place Suite 670W, San Jose, California ("Interra IT"), and describes the terms and conditions pursuant to which Interra IT will provide professional services with respect to Customer's software and IT environment, products, and infrastructure (collectively referred to as the "Software").

In consideration of the mutual promises and upon the terms and conditions set forth below, the parties agree as follows:

1. **Scope of Services**

    1.1    **Services.** Interra IT shall provide the professional development and implementation services (the "Services") described in Schedule A attached hereto, originally submitted on January 15, 2005, and as amended from time to time by agreement of the parties.

    1.2    **Manner of Performance.** Interra IT will retain the sole and exclusive right to control or direct the manner or means by which the Services are performed and may subcontract or assign any or all of its obligations and rights under this Agreement. Any such subcontract or assignment is subject to Customer's consent, which consent shall not be unreasonably withheld or delayed.

    1.3    **Software.** The Services will be provided for the current release of the Software, unless otherwise specifically noted. The scope of Services is noted in Schedule A, and Interra IT will not be responsible for the migration or customization of the Services for updates, releases and new versions of the Software, unless Customer separately contracts for such migration or customization.

2. **Customer's Duties and Responsibilities**

    2.1    **Data, Information and Equipment.** Customer shall make available in a timely manner at no charge to Interra IT all technical data, computer facilities, programs, files, documentation, test data, sample output, or other information and resources required by Interra IT for the performance of the Services. Customer will be responsible for, and assumes the risk of any problems resulting from, the content, accuracy, completeness and consistency of all such data, materials and information supplied by Customer. Customer shall provide, at no charge to Interra IT, office space, services and equipment (such as copiers, fax machines and modems) as Interra IT reasonably requires to perform the Services when Services are performed at the Customer's premises or as otherwise agreed to between Customer and Interra IT and noted in Schedule A.

    2.2    **Tasks.** Responsibility for the proper implementation of the Software is with Customer; Interra IT's role is to assist Customer with such implementation. Tasks that are primarily the responsibility of Customer's personnel will remain Customer's responsibility and will remain under Customer's supervision, management and control, even if Interra IT assists Customer in performing such tasks.

3. **Relationship of Parties**

    3.1    **Independent Contractors.** Each party will be and act as an independent contractor and not as an agent or partner of, or joint venture with, the other party for any purpose related to this Agreement or the transactions contemplated by this Agreement, and neither party by virtue of this Agreement will have any right, power or authority to act or create any obligation, expressed or implied, on behalf of the other party.

    3.2    **Contact Person.** Each party will appoint in writing an employee or agent of such party to act as the "Contact Person" for all communication between the parties related to the Services. The Contact Person will be responsible for monitoring the status of the Services and will schedule regular meetings with both technical and management personnel of each party to review the status of the Services. Either party may change its Contact Person upon written notice to the other.

    3.3    **Nonsolicitation.** Customer acknowledges and agrees that the employees and consultants of Interra IT who perform the Services are a valuable asset to Interra IT and are difficult to replace. Accordingly, Customer agrees that for a

- 1 -

Exhibit _____1_____

Page __1__ of __8__

04/30/2008 16:11 FAX

period of one (1) year after the completion of the Services, it will not offer employment as an employee, independent contractor or consultant to any Interra IT employee or consultant who performs any of the Services. If Customer hires in violation of this Section 3.3, Customer shall pay to Interra IT damages equal to fifty percent (50%) of that individual's annual salary. For purposes of this Agreement, an individual's annual salary will mean either that individual's annual salary with Interra IT or with Customer as of the date of breach, whichever is greater.

4. **Fees and Payments**

4.1 **Fees.** Customer shall pay Interra IT on a time and materials basis for the Services in accordance with the fees set forth on Schedule A attached hereto and payable in full by the December 31, 2004. Interra IT hereby reserves the right to modify the fees by providing Customer with written notice within thirty (30) days of any such modification. Interra IT will invoice Customer on a biweekly basis as Services are performed, except if specified differently in the Schedule A. All payments for fees and expenses must be made within fifteen (15) days of the date of invoice.

4.2 **Expenses.** Customer shall reimburse all reasonable travel and other related expenses incurred by Interra IT in performance of the Services. These are itemized and defined in Schedule A.

4.3 **Taxes.** Customer also agrees to pay or reimburse Interra IT for all federal, state, dominion, provincial or local sales, use, personal property, excise or other taxes, fees or duties arising out of this Agreement or the transactions contemplated by this Agreement (other than taxes on the net income of Interra IT).

4.4 **Interest and further costs.** Customer shall pay Interra IT one (1) and one half percent interest, or the maximum rate allowable by law, whichever is less, per month on the outstanding balance of any fees or expenses not paid within thirty (30) days of the date of invoice. Customer shall further be responsible for all costs incurred by Interra IT in connection with any claim made by Interra IT in order to recover payment of Customer's account, including without limitation, all professional fees and legal costs.

4.5 **Invoices.** Services will commence as soon as practical following Interra IT's receipt and acceptance of a signed copy of this Agreement or a purchase order or other written authorization of the Services. If Customer's procedures allow payment of invoices without a purchase order, Customer shall provide a letter stating that fact to Interra IT. Notwithstanding the foregoing, no terms, provisions or conditions of any purchase order or other business form or written authorization used by Customer will have any effect on the rights, duties or obligations of the parties under, or otherwise modify, this Agreement, regardless of any failure of Interra IT to object to such terms, provisions, or conditions.

5. **Warranty and Limitation of Liability**

5.1 **Warranty and Disclaimer.** *Interra IT warrants to Customer that it will perform the Services in a professional and workmanlike manner. Interra IT makes no warranties, whether express, implied, or statutory, regarding or relating to any materials or services furnished or provided to Customer under this Agreement. Interra IT specifically disclaims all implied warranties of merchantability and fitness for a particular purpose with respect to said materials and services, and with respect to the use of any of the foregoing.* No employee, agent, representative, or affiliate of Interra IT has authority to bind Interra IT to any oral representations or warranty concerning the Software or the Services. Any written representation or warranty not expressly contained in this Agreement will not be enforceable. Schedule A will cover any warranty items not listed above.

5.2 **Limitation of Liability.** *In no event will Interra IT be liable for any loss of profits, loss of use, business interruption, loss of data, cost of cover, or indirect, special, incidental, or consequential damages of any kind in connection with or arising out of the furnishing, performance or use of services, whether alleged as a breach of contract or tortious conduct, including negligence, even if Interra IT has been advised of the possibility of such damages. In addition, Interra IT will not be liable for any damages caused by delay in delivery or furnishing the Services. Interra IT's liability under this Agreement for direct, indirect, special, incidental and/or consequential damages of any kind, including, without limitation, restitution, will not, in any event, exceed the fees paid by Customer to Interra IT under Section 4.1 of this Agreement.* The provisions of this Section 5 allocate risks under this Agreement between Customer and Interra IT. Interra IT's pricing reflects this allocation of risk and limitation of liabilities.

5.3 **Timing.** No action arising out of any breach or claimed breach of this Agreement or the transactions contemplated by this Agreement may be brought by either party more than one (1) year after the cause of action has accrued. For

- 2 -

Exhibit ___1___
Page __2__ of _8_

04/30/2008 16:12 FAX

purposes of this Agreement, a cause of action will be deemed to have accrued when a party knew or reasonably should have known of the breach or claimed breach.

6.  **Ownership of Proprietary Rights**

6.1  **Ownership.** The Software and all works of authorship, data, inventions and discoveries developed, reduced to practice, or conceived in the course of performance of the Services under this Agreement by Interra IT (collectively, "Inventions") are the sole property of Customer. To the extent that Interra IT would otherwise have a claim to any such rights, Interra IT hereby assigns to Customer all worldwide right, title and interest to the Inventions. Nothing in this Section shall be construed to assign to Customer any pre-existing intellectual property rights or inventions owned by Interra IT.

6.2  **Right to Develop Independently.** Customer understands and acknowledges that Interra IT is in the business of developing products and providing consulting services similar to those provided for Customer for other parties generally based upon the same computer software, tools and knowledge base and Customer agrees that nothing in this Agreement will impair Interra IT's right to provide the same services or develop for itself or others deliverables substantially similar to, or performing the same or similar functions as the Software and Services under this Agreement.

7.  **Term and Termination**

7.1  **Term.** This Agreement will take effect on the Effective Date and will remain in effect till the date of completion of the Services as noted in Schedule A, unless earlier terminated in accordance with Section 7.2.

7.2  **Termination.** This Agreement may be terminated, (a) with or without cause, by Customer upon thirty (30) days' prior written notice to Interra IT or as otherwise noted specifically in Schedule A, provided that no such termination will entitle Customer to a refund of any portion of the Services fee; (b) by Interra IT if Customer (i) fails to pay any amount due to Interra IT under this Agreement within thirty (30) days after Interra IT gives written notice of such non-payment, or (ii) commits a material non-monetary breach of this Agreement, which breach, if capable of being cured, is not cured within thirty (30) days of a written notice of such breach by Interra IT; (c) by Interra IT if Customer (i) terminates or suspends its business activities, (ii) becomes insolvent, admits in writing its inability to pay its debts as they mature, makes an assignment for the benefit of creditors, or becomes subject to direct control of a trustee, receiver or similar authority, or (iii) becomes subject to any bankruptcy or insolvency proceeding under federal or state statutes.

7.3  **Effect of Termination.** Termination of this Agreement will not affect the provisions relating to the payment of amounts due, or the provisions of Sections 3.1, 3.3, 4, 5, 6, 8 or 9 of this Agreement, all of which will survive termination of this Agreement, regardless of the reason for termination.

8.  **Confidential Information**

8.1  **Definition.** The parties acknowledge that by reason of their relationship to each other hereunder each will have access to certain information and materials concerning the other's business, plans, customers, technology and/or products that is confidential and of substantial value to that party, which value would be impaired if such information were disclosed to third parties ("Confidential Information").

8.2  **Obligation.** Each party agrees that it will not use in any way for its own account, or for the account of third parties, nor disclose to any third party, any Confidential Information revealed to it by the other party. Each party will protect the Confidential Information by using the same degree of care it uses for its own confidential information, but in no event less than reasonable care. Upon request by the receiving party, the disclosing party will advise whether or not it considers any particular information to be Confidential Information.

9.  **General**

9.1  **Assignment.** Neither party may assign any of its rights or delegate any of its obligations under this Agreement, whether by operation of law or otherwise, without the prior express written consent of the other party.

9.2  **Modification; Amendment.** No modification, amendment or waiver of any provision of this Agreement shall be effective unless in writing and signed by the party to be charged. No failure or delay by either party in exercising any

- 3 -

Exhibit____1____
Page___3___ of ___8____

right, power, or remedy under this Agreement, except as specifically provided herein, shall operate as a waiver of any such right, power or remedy.

9.3 **Force Majeure.** Except for Customer's obligations to pay Interra IT hereunder, neither party shall be liable to the other party for any failure or delay in performance caused by reasons beyond its reasonable control, including but not limited to acts of God, strikes or shortages of materials.

9.4 **Notices.** All notices, demands or consents required or permitted under this Agreement shall be in writing. Notice shall be sent to the parties at the addresses set forth on the first page of this Agreement or at such other address as shall be given by either party to the other in writing.

9.5 **Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be contrary to law, such provision shall be changed and interpreted so as to best accomplish the objectives of the original provision to the fullest extent allowed by law and the remaining provisions of this Agreement shall remain in full force and effect.

9.6 **Entire Agreement.** This Agreement, including all Exhibits attached hereto, constitutes the final, complete and exclusive agreement between the parties with respect to the subject matter hereof, and supersedes any prior or contemporaneous agreement.

9.7 **Governing Law.** This Agreement shall be governed by the laws of the State of California, USA, excluding conflict of laws provisions and excluding the 1980 United Nations Convention on Contracts for the International Sale of Goods. All disputes arising out of this Agreement shall be subject to the exclusive jurisdiction and venue of the state and federal courts of Santa Clara County, California, and the parties consent to the exclusive and personal jurisdiction of these courts.

**IN WITNESS WHEREOF,** the parties have executed this Agreement.

Westbrook Technologies Inc ("CUSTOMER")          Interra Information Technologies, Inc. ("INTERRA IT")

By: _____                     By: _____

Marshall Pimenta                                  Michael Carroll
Chief Technology Officer                          Assistant Controller
Date: _1st feb 2004_                              Date: _2-9-04_

- 4 -

WestbrookTech_InterraIT_Contract_2004.doc

Exhibit _____1_____
Page _4_ of _8_

`04/30/2008 16:12 FAX

# SCHEDULE A: SOFTWARE SERVICES TO Westbrook Technologies

### Schedule A to Professional Services Agreement dated January 15, 2004

### Between

### Westbrook Technologies Inc. ("Westbrook")

### And

### Interra Information Technologies, Inc. ("InterraIT")

## 1. INTRODUCTION

This Schedule A provides details of the services being provided by InterraIT to Westbrook Technologies for the maintenance, enhancement and development of software being developed or used by Westbrook Technologies.

## 2. PROJECT TERMS

The terms addressed in this proposal are in response to Westbrook Technologies need for offshore consulting resources to augment their Professional Services and Development teams.

1. InterraIT will maintain a core team of three (3) consultants specialists — one (1) based in the US at the Westbrook Technologies main office, and two (2) based offshore at their India development center. This core team will be dedicated to Westbrook Technologies to work on their Professional Services engagements and Development projects. InterraIT staff will work 40 hours a week from Monday to Friday, during standard business hours in the US and India. InterraIT staff based in India will follow public holidays as per list of InterraIT public holidays in India, and US-based staff will follow Westbrook Technologies company and public holidays. The InterraIT holiday list will be provided to Westbrook Technologies, and the project schedule will be defined accordingly.

2. This core team will be required to visit the Westbrook Technologies location at Branford, Connecticut to undergo training. Training will consist of one or more of — public training courses, professional services implementation training, development training. Westbrook Technologies will provide the public training courses free of charge to InterraIT. The list of public training courses and their duration will be defined separately. InterraIT will not charge Westbrook Technologies for the time their staff attend the public training course or for travel for the sole purpose of attending these training courses, unless approved by Westbrook Technologies in advance.

3. After the completion of the training period, the core team will return to InterraIT's India Development Center to undertake project work as assigned by the Westbrook managers. This team will also act as a seed for growth in the offshore team, and will train other consultants as required.

4. InterraIT will designate a Project Manager who will be the principal point of contact with Westbrook Technologies for all discussions. Typically, the InterraIT Project

Exhibit ___1___

Page 5 of 8

04/30/2008 16:12 FAX                                                                    ☒023

Manager will be a part of the offshore team identified as part of the Westbrook Technologies core team.

5. InterraIT will offer Westbrook Technologies the capability of ramping up and subsequently ramping down the team of offshore consultants. Typically, a notice period of 30 days will be required for change in the team size.

6. A reduction in the size of the core team of three will require a notice period of 30 days. Westbrook Technologies will make best endeavors to provide as much advance notice as possible.

7. The InterraIT team of consultants will access the Westbrook Technologies servers as required. The access will be over a secure VPN connection from the InterraIT development center to the Westbrook Technologies data center. Wherever possible, InterraIT will establish a software setup in its offshore development center, and Westbrook Technologies will provide all necessary software media and licenses.

8. Over the lifetime of this contract, Westbrook Technologies management will identify specific projects to be executed by the InterraIT consultants. It will be Westbrook Technologies responsibility to ensure that there is a steady pipeline of projects to keep the consultants occupied.

9. It will be InterraIT's responsibility to maintain the pool of trained resources, and manage them. InterraIT will manage staff turnover, including attrition, from the pool.

10. The scope of work for each activity will be defined separately and agreed to by the Westbrook Technologies and InterraIT project management. The project plan, schedule and other details will be published using templates compliant to InterraIT's Quality Management System as far as possible.

11. Acceptance criteria will be discussed and agreed with Westbrook Technologies Program Manager for all the deliverables.

12. All other project related issues will be discussed with Westbrook Technologies Program Manager during a weekly conference call, the time and day of which will be decided mutually. In the event of serious or urgent issues, they will be raised as soon as they arise. The InterraIT and Westbrook Technologies Project Managers will publish a schedule of contact information for such a requirement.

13. Written status reports will be provided weekly by the InterraIT Project Manager. Other required reports will be defined and provided as required.

14. The offshore project team will be in daily contact with the designated Westbrook Technologies contacts, by email, voice and instant messaging.

15. InterraIT will not be liable for any financial loss incurred by Westbrook Technologies because of any delay in delivery or due to any other issue including but not limited to bugs.

16. Westbrook Technologies reserves the rights to refuse individuals nominated by InterraIT who do not fit in with the team, do not have the required skills or are viewed as not being able to deliver the projects required.

17. InterraIT acknowledges that Westbrook Technologies will maintain proprietary rights on Intellectual Property (IP) for any work undertaken by InterraIT on behalf of or in conjunction with Westbrook Technologies, and shall remain the sole property of Westbrook Technologies, Inc. This work will include but not be limited to trade

© INTERRAIT, 2003

INTERRAIT CONFIDENTIAL
Exhibit ___1___
Page __4__ of __8__

secrets, research, invention, process, design, specification and software code. This clause will not apply to information that

- Was previously known to InterraIT free of any obligation to keep it confidential
- Is or becomes publicly available, by other than unauthorized disclosure
- Is disclosed to third parties by Westbrook Technologies without restrictions
- Is received from a third party whose disclosure would not violate any confidentiality obligation

## 3. PRICING STRATEGY

InterraIT follows a pricing strategy defined at organization level for different skill areas and competency levels. The consulting services rates are provided in the following table:

### Table 1: Rate Schedule for Onsite/Offshore Effort

| Specialist Level | US-based ($ / hour) | India-based ($ / hour) |
|---|---|---|
| Project Manager/Architect/Senior Analyst | 55 . | 27.5 |
| Analyst/Programmer/Tester | 45 | 25 |

**NOTES:**

1. The onsite co-ordinator's level will depend on his experience level. Typically, a specialist with 9 or more years of experience will be considered at the project manager level.

2. Any deviation from this rate schedule will be agreed on in advance by Westbrook Technologies and InterraIT in writing before the start of the particular engagement that has a different rate structure.

3. In the event the team size increases to a level of 5 or more including both the onsite and offshore staffing, for a calendar year, InterraIT will provide a volume discount. The discount will be 10% of the rates for the offshore team in India.

4. InterraIT will invoice Westbrook Technologies for airfare of consultants required to visit Branford, Connecticut or other Westbrook Technology locations for a period of less than 30 days. This will be based on actuals, and is typically $2,000 per visit. The expense will be agreed on with Westbrook Technologies before the trip.

5. The boarding, lodging, travel and incidental expenses incurred by the InterraIT staff to Branford, Connecticut, or any other Westbrook Technologies site for visits of less than 30 days in connection with this project will be invoiced to

Westbrook Technologies on actual cost basis. InterraIT is also aware of the need to economize, and would like to make use of Westbrook Technologies's corporate discounts in hotel, car rental and other facilities so that the expenses are lowered as much as possible. All such costs will be agreed with Westbrook Technologies prior to the trip, and will be restricted to actuals.

6. InterraIT will invoice Westbrook Technologies once a month. Payment is required within 30 days of receiving the invoice.

7. Unless explicitly stated otherwise, InterraIT will invoice Westbrook Technologies for 40 hours/week, 52 weeks/year, and will not bill for any additional hours the employee may have actually worked. If InterraIT consultants are spending more than 55 hours/week at Westbrook Technologies' explicit request, InterraIT will invoice for the actual additional hours.

8. The cost structure for the India-based staff includes basic office (one PC workstation per consultant), computing and network infrastructure. It also includes lodging in the Branford area for any US-based staff. Any project-specific travel, e.g. travel to a Westbrook Technologies customer or other location, or any project-specific hardware, including servers, or special software that are required by InterraIT for this specific project, will either be provided by Westbrook Technologies, or charged back.

9. In the event that team members are required to travel to Branford, or other Westbrook location, Westbrook Technologies will provide the InterraIT team with reasonable office space and office facilities, communications, and computing facilities. Non-Westbrook-work related expenses, including personal phone call and other actions resulting in costs for Westbrook, will not be paid for by Westbrook.

◆◆◆◆◆

© INTERRAIT, 2003

INTERRAIT CONFIDENTIAL.
**Exhibit_____**
**Page __8__ of __8__**

04/30/2008 16:13 FAX                                                                    ☒026

FAXED

<u>Statement of Work</u>

<u>For</u>

<u>Fortis.Net and Fortis SOA Project</u>

## 1. INTRODUCTION

Re: Professional Services Agreement dated January 15, 2004 Between Westbrook Technologies Inc. ("Westbrook") and Interral Information Technologies, Inc. ("InterralT")

This SOW provides details of the services being provided by InterralT to Westbrook Technologies for the development of Fortis SOA being developed by Westbrook Technologies.

## 2. PROJECT TERMS

The terms addressed in this proposal are in response to Westbrook Technologies need for offshore consulting resources to augment their Professional Services and Development teams.

1.  The initial duration of the engagement is 12 months (1 year) effective June 19, 2006. However any extension would be communicated and agreed by both the companies with the appropriate changes.

2.  InterralT will maintain a core team of five (5) consultants based offshore in India development center. This team will be dedicated to Westbrook Technologies to work on their Professional Services engagements and Development projects. InterralT staff will work 40 hours a week from Monday to Friday, during standard business hours. InterralT staff in India, InterralT staff based in India, will follow public holidays as per list of InterralT Company public holidays in India, and US-based staff will follow Westbrook Technologies Company and public holidays. The InterralT holiday list will be provided to Westbrook Technologies, and the project schedule will be defined accordingly.

3.  InterralT's designated Project Manager will be the principal point of contact with Westbrook Technologies for all discussions. Typically, the InterralT Project Manager will be a part of the offshore team identified as part of the Westbrook Technologies core team.

4.  InterralT will offer Westbrook Technologies the capability of ramping up and subsequently ramping down the team of offshore consultants. Typically, a notice period of 30 days will be required for change in the team size.

5.  A reduction in the size of the core team of five will require a notice period of 30 days. Westbrook Technologies will make best endeavors to provide as much advance notice as possible.

6.  The InterralT team of consultants will access the Westbrook Technologies servers as required. The access will be over a secure VPN connection from the InterralT development center to the Westbrook Technologies data center. Wherever possible, InterralT will establish a software setup in its offshore development center, and Westbrook Technologies will provide all necessary software media and licenses.

7.  Over the lifetime of this contract, Westbrook Technologies management will identify specific projects to be executed by the InterralT consultants. It will be Westbrook Technologies responsibility to ensure that there is a steady pipeline of projects to keep the consultants occupied.

8.   It will be InterraIT's responsibility to maintain the pool of trained resources, and manage them. InterraIT will manage staff turnover, including attrition, from the pool.

9.   The scope of work for the entire project is summarized below:

The team will be engaged in the design and development of Fortis SOA functionality. Initial assignments could be the following but this may change based on detailed planning:

- Smart Client
- Web Client
- Scanning
- Create/Store Renditions
- Global Variables Expression Update
- OCR
- Full Text Engine
- Format Mask Syntax
- MS-Office Integration
- WebDav
- Builds & Installs

10.  The project plan, schedule and other details will be published using templates which would be compliant to both InterraIT and Westbrook Technologies development standards.

11.  Acceptance criteria will be discussed and agreed with Westbrook Technologies Program Manager for all the deliverables.

12.  All other project related issues will be discussed with Westbrook Technologies Program Manager during a weekly conference call, the time and day of which will be decided mutually. In the event of serious or urgent issues, they will be raised as soon as they arise. The InterraIT and Westbrook Technologies Project Managers will publish a schedule of contact information for such a requirement.

13.  Written status reports will be provided weekly by the InterraIT Project Manager. Other required reports will be defined and provided as required.

14.  The offshore project team will be in contact with the designated Westbrook Technologies contacts, by email, voice and instant messaging.

15.  InterraIT acknowledges that Westbrook Technologies will maintain proprietary rights on Intellectual Property (IP) for any work undertaken by InterraIT on behalf of or in conjunction with Westbrook Technologies, and shall remain the sole property of Westbrook Technologies, Inc. This work will include but not be limited to trade secrets, research, invention, process, design, specification and software code. This clause will not apply to information that

- Was previously known to InterraIT free of any obligation to keep it confidential
- Is or becomes publicly available, by other than unauthorized disclosure
- Is disclosed to third parties by Westbrook Technologies without restrictions
- Is received from a third party whose disclosure would not violate any confidentiality obligation

## 3. PRICING STRUCTURE

InterraIT proposes the following pricing structure defined at organization level for different skill areas and competency levels. The consulting T&M service rates are provided in the following table.

### Table 1: Rate Schedule for Onsite/Offshore Effort

| Technical Skills/Level | IH experience | Hourly Billing rates | |
|---|---|---|---|
| | | Onsite | Offshore |
| Senior Design Analyst | 6 -8 years | $70 - $75 | $25 |
| Lead developer/Programmer analyst | 4 - 6 years | $65 - $70 | $20 |
| Developer C#, .Net | 4 - 6 years | $60 - $65 | $20 |
| Developer | 1 - 4 years | $50 - $55 | |

For Abhinav, the billing rate is as follows:
Onsite : $60/Hr.
Offshore : $30/Hr.

Westbrook being a preferred customer will have a choice to include a mix of skill level mentioned above as their Core Team. For e.g Westbrook could request for a project manager, 1 senior design analysts and 3 programmer analysts in a team of 5 people or 1 project manager, 1 Developer C#, .NET, 1 Developer, 1 senior design analyst, 2 lead developer analyst.

NOTES:

1. Any deviation from this rate schedule will be agreed on in advance by Westbrook Technologies and InterraIT in writing before the start of the particular engagement that has a different rate structure.

2. In the event the team size increases to a level of 5 or more including both the onsite and offshore staffing, for a calendar year, InterraIT will provide a volume discount. This discount will be 10% of the rates for the offshore team in India.

3. InterraIT will invoice Westbrook Technologies for airfare of consultants required to visit Branford, Connecticut or other Westbrook Technology locations for a period of less than 30 days. This will be based on actuals, and is typically $2,000 per visit. The expense will be agreed on with Westbrook Technologies before the trip.

4. The boarding, lodging, travel and incidental expenses incurred by the InterraIT staff to Branford, Connecticut, or any other Westbrook Technologies site for visits of less than 30 days in connection with this project will be invoiced to Westbrook Technologies on actual cost basis. InterraIT is also aware of the need to economize, and would like to make use of Westbrook Technologies's corporate discounts in hotel, car rental and other

Exhibit ___2___
Page __3__ of __4__

facilities so that the expenses are lowered as much as possible. All such costs will be agreed with Westbrook Technologies prior to the trip, and will be restricted to actuals.

5. InterraIT will invoice Westbrook Technologies once a month. Payment is required within 30 days of receiving the invoice.

6. Unless explicitly stated otherwise, InterraIT will invoice Westbrook Technologies for 50 hours/week, and will not bill for any additional hours the employee may have actually worked. If InterraIT consultants are spending more than 50 hours/week at Westbrook Technologies' explicit request, InterraIT will invoice for the actual additional hours.

7. The cost structure for the India-based staff includes basic office (one PC workstation per consultant), computing and network infrastructure. It also includes logging in the Branford area for any US-based staff. Any project-specific travel, e.g. travel to a Westbrook Technologies customer or other location, or any project-specific hardware, including servers, or special software that are required by InterraIT for this specific project, will either be provided by Westbrook Technologies, or charged back.

8. In the event that team members are required to travel to Branford, on other Westbrook location, Westbrook Technologies will provide the InterraIT team with reasonable office space and office facilities, communications, and computing facilities. None of Westbrook work related expenses including personal phone call and other actions resulting in cost for Westbrook, will not be paid for by Westbrook.

Accepted by:

Westbrook Technologies, Inc.                     Interra Information Technologies, Inc.


Signature: _____              Signature: _____

Name: Marshall Pimenta                           Name: Michael Carroll

Title: CTO                                       Title: Asst. Controller

Date: July 27, 2006                              Date: July 27, 2006

04/30/2008 16:14 FAX @030

# INTERRA
Information Technologies

Interra Information Technologies, Inc.
2081 Gateway Place, Suite # 675W
San Jose, CA 95110
Phone: (408) 451-1700
Fax: (408) 441-7495

**INVOICE**

INVOICE NO: **8451**
DATE: February 5, 2007

TO
Westbrook Technologies Inc
22 Summit Place
Branford, CT 06405

ENTD FEB 05

| INVOICE DATE | TERMS | P.O.NUMBER | BUSINESS UNIT | NOTES | MANAGER |
|---|---|---|---|---|---|
| | | | | | Marshall Pomona |
| 02/05/07 | NET-30 | Agreement | INTERRA IT | | |

| PERIOD | LOCATION | PROJECT DESCRIPTION | NAME | RATE (/HR) | HOURS | AMOUNT |
|---|---|---|---|---|---|---|
| Jan-07 | India | Fortis SOA | Aazad K Iyer | $20.00 | 155.00 | $3,100.00 |
| | | | Gouri Shanker | $25.00 | 216.00 | $5,400.00 |
| | | | Sahaj Arora | $20.00 | 200.00 | $4,000.00 |
| | | | Vijay Kapoor | $22.00 | 204.00 | $4,488.00 |
| | | | Bhasker Chunnaria | $20.00 | 206.00 | $4,120.00 |
| | | | Gurjeet Ramspal | $20.00 | 90.00 | $1,800.00 |
| | | | Ashwini Singh | $20.00 | 200.00 | $4,000.00 |
| | | | Gaurav Khanna | $20.00 | 210.00 | $4,200.00 |
| | | | Rupsa Mehra | $20.00 | 40.00 | $800.00 |
| | | | Peter Barrand | $25.00 | 71.00 | $1,775.00 |
| | | | Rita Gupta | $25.00 | 60.00 | $1,500.00 |
| Note:Total number of consultant > 5 so there is a discount of 10% on offshore rate | | | | | 1652.00 | $35,183.00 |
| **SUB TOTAL** | | | | | | $0.00 |
| | | | | | SALES TAX | $0.00 |
| | | | | | LESS DISCOUNT | $3,518.30 |
| | | | | | SHIPPING & HANDLING | $0.00 |
| | | | | | TOTAL DUE | $31,664.70 |

Client Relationship Manager  | Sumit Manjit Chhabra |

PLEASE NOTE OUR PAYMENT ADDRESS:
Interra Information Technologies, Inc.
Dept CH 10794
Palatine, IL 60055-0794

If you have any questions with this invoice contact: Michael Carroll, Assistant Controller at 408-451-1700

THANK YOU FOR YOUR BUSINESS!

Exhibit ___3___
Page ___1___ of ___4___

Page 1 of 1

04/30/2008 16:14 FAX

**INTERRA**
Information Technologies

Interra Information Technologies, Inc.
2001 Gateway Place, Suite # 670W
San Jose, CA 95110
Phone: (408) 451-1700
Fax: (408) 441-7495

**INVOICE**

INVOICE NO:    8586
DATE:    February 28, 2007

TO
Westbrook Technologies Inc
22 Summit Place
Branford, CT 06405

| INVOICE DATE | TERMS | P.O.NUMBER | BUSINESS UNIT | NOTES | MANAGER |
| --- | --- | --- | --- | --- | --- |
| | | Agreement | INTERRA IT | | Marshall Fineman |
| 02/28/07 | NET-30 | | | | |

| PERIOD | LOCATION | PROJECT DESCRIPTION | NAME | RATE ($/HR) | HOURS | AMOUNT |
| --- | --- | --- | --- | --- | --- | --- |
| Feb-07 | India | Fortis SOA | Anand K Iyer | $20.00 | 160.00 | $3,200.00 |
| | | | Gouri Shankar | $25.00 | 160.00 | $4,000.00 |
| | | | Bahaj Arora | $20.00 | 160.00 | $3,200.00 |
| | | | Vijay Kapoor | $22.00 | 116.00 | $2,552.00 |
| | | | Madhumita Dasshima | $20.00 | 44.00 | $880.00 |
| | | | Devesh Tapno | $20.00 | 160.00 | $3,200.00 |
| | | | Ashwini Singh | $20.00 | 160.00 | $3,200.00 |
| | | | Gaurav Khanna | $20.00 | 160.00 | $3,200.00 |
| | | | Rupça Mehta | $20.00 | 104.00 | $2,080.00 |
| | | | Peter Barstod | $25.00 | 160.00 | $4,000.00 |
| | | Note:Total number of consultant > 5 so there is a discount of 10% on offshore rate | | | 1384.00 | $29,512.00 |

| | |
| --- | --- |
| SUB TOTAL | |
| SALES TAX | $0.00 |
| LESS: DISCOUNT | $2,951.20 |
| SHIPPING & HANDLING | $0.00 |
| TOTAL DUE | $26,560.80 |

Client Relationship Manager    Sarah Manjit Chhabra

PLEASE NOTE OUR PAYMENT ADDRESS
Interra Information Technologies, Inc.
Dept CH 10794
Palatine, IL 60055-0794

If you have any questions with this invoice contach Michael Carroll, Assistant Controller at 408-451-1708

THANK YOU FOR YOUR BUSINESS!

Exhibit    3
Page    2    of    6

Page 1 of 1

04/30/2008 16:14 FAX                                                                    ☒032

**INTERRA**
Information Technologies

Interra Information Technologies, Inc.
2001 Gateway Place, Suite 8 670W
San Jose, CA 95110
Phone: (408) 451-1700
Fax: (408) 441-7496

**INVOICE**

INVOICE NO: 8762
DATE: March 31, 2007

TO
Westbrook Technologies Inc
22 Summit Place
Branford, CT 06405

| INVOICE DATE | TERMS | P.O.NUMBER | BUSINESS UNIT | NOTES | MANAGER |
|---|---|---|---|---|---|
| 03/31/07 | NET-30 | Agreement | INTERRA IT | | Marshall Pinnata |

| PERIOD | LOCATION | PROJECT DESCRIPTION | NAME | RATE ($/HR) | HOURS | AMOUNT |
|---|---|---|---|---|---|---|
| Mar-07 | India | Fortis BOA | Anand K Iyer | $20.00 | 176.00 | $3,520.00 |
| | | | Gouri Shankar | $25.00 | 176.00 | $4,400.00 |
| | | | Sahaj Arora | $20.00 | 176.00 | $3,520.00 |
| | | | Kavita Soni | $20.00 | 176.00 | $3,520.00 |
| | | | Madhumita Dasshuma | $20.00 | 176.00 | $3,520.00 |
| | | | Devesh Tapan | $20.00 | 176.00 | $3,520.00 |
| | | | Ashwini Singh | $20.00 | 176.00 | $3,520.00 |
| | | | Gaurav Khanna | $20.00 | 176.00 | $3,520.00 |
| | | | Rupen Mehra | $30.00 | 176.00 | $5,520.00 |
| | | | Peter Barrend | $25.00 | 176.00 | $4,400.00 |

Note: Total number of consultant > 6 so there is a discount of 10% on offshore rate

|  |  |
|---|---|
| | 1760.00 / $36,960.00 |
| **SUB TOTAL** | SALES TAX $0.00 |
| | LESS: DISCOUNT $3,696.00 |
| | SHIPPING & HANDLING $0.00 |
| | TOTAL DUE $33,264.00 |

Client Relationship Manager    Sumit Manjit Chhabra

PLEASE NOTE OUR PAYMENT ADDRESS
Interra Information Technologies, Inc.
Dept CH 10794
Palatine, IL 60055-0794

If you have any questions with this invoice contact: Michael Carroll, Assistant Controller at 408-451-1708

THANK YOU FOR YOUR BUSINESS!

Exhibit___3___
Page__3__ of _4_

Page 1 of 1

04/30/2008 16:14 FAX

# INTERRA
## Information Technologies

Interra Information Technologies, Inc.
2001 Gateway Place, Suite # 670W
San Jose, CA 95110
Phone: (408) 451-1708
Fax: (408) 441-7495

# INVOICE

| INVOICE NO: | 8931 |
|---|---|
| DATE: | April 30, 2007 |

TO
Westbrook Technologies Inc
22 Summit Place
Branford, CT 06405

| INVOICE DATE | TERMS | P.O.NUMBER | BUSINESS UNIT | NOTES | MANAGER |
|---|---|---|---|---|---|
| | | | INTERRA IT | | Murdaul Pinneau |
| 04/30/07 | NET-30 | Agreement | | | |

| PERIOD | LOCATION | PROJECT DESCRIPTION | NAME | RATE [$/HR] | HOURS | AMOUNT |
|---|---|---|---|---|---|---|
| Apr-07 | India | Forté SOA | Anand K Iyer | $20.00 | 168.00 | $3,360.00 |
| | | | Gouri Shankar | $25.00 | 168.00 | $4,200.00 |
| | | | Sahaj Arora | $20.00 | 168.00 | $3,360.00 |
| | | | Kavita Soni | $20.00 | 168.00 | $3,360.00 |
| | | | Madhumita Das Sharma | $20.00 | 168.00 | $3,360.00 |
| | | | Devesh Tapan | $20.00 | 168.00 | $3,360.00 |
| | | | Ashwini Singh | $20.00 | 168.00 | $3,360.00 |
| | | | Gaurav Khanna | $20.00 | 168.00 | $3,360.00 |
| | | | Rupin Mehta | $20.00 | 168.00 | $3,360.00 |
| | | | Peter Barraud | $25.00 | 168.00 | $4,200.00 |

Note: Total number of consultants > 5 so there is a discount of 10% on offshore rate

| | | |
|---|---|---|
| | 1680.00 | $35,280.00 |
| SUB TOTAL | | |
| SALES TAX | | $0.00 |
| LESS: DISCOUNT | | $3,528.00 |
| SHIPPING & HANDLING | | $0.00 |
| TOTAL DUE | | $31,752.00 |

Client Relationship Manager    Sunnie Manjit Chhabra

PLEASE NOTE OUR PAYMENT ADDRESS
Interra Information Technologies, Inc.
Dept CH 10794
Palatine, IL 60055-0794

If you have any questions with this invoice contact: Michael Carroll, Assistant Controller at 408-451-1708

THANK YOU FOR YOUR BUSINESS!

Exhibit ___3___
Page __4__ of __4__

Page 1 of 1

04/30/2008 16:14 FAX

# INTERRA
### Information Technologies

Interra Information Technologies, Inc.
2901 Gateway Place, Suite # 579W
San Jose, CA 95110
Phone: (408) 451-1709
Fax: (408) 441-7495

# INVOICE

| INVOICE NO: | 9101 |
|---|---|
| DATE | May 31, 2007 |

TO
Westbrook Technologies Inc
22 Summit Place
Branford, CT 06405

| INVOICE DATE | TERMS | P.O.NUMBER | BUSINESS UNIT | NOTES | MANAGER |
|---|---|---|---|---|---|
| 05/31/07 | NET-30 | Agreement | INTERRA IT | | Marshall Edmonds |

| PERIOD | LOCATION | PROJECT DESCRIPTION | NAME | RATE (HR) | HOURS | AMOUNT |
|---|---|---|---|---|---|---|
| May-07 | India | Furia SOA | Amred K Iyer | $20.00 | 184.00 | $3,680.00 |
| | | | Gouri Shankar | $25.00 | 184.00 | $4,600.00 |
| | | | Sahej Arora | $20.00 | 184.00 | $3,680.00 |
| | | | Seemanki Jain | $20.00 | 184.00 | $3,680.00 |
| | | | Madhumita Das Sharma | $20.00 | 184.00 | $3,680.00 |
| | | | Devesh Tapase | $20.00 | 184.00 | $3,680.00 |
| | | | Ashwini Singh | $20.00 | 184.00 | $3,680.00 |
| | | | Gaurav Khanna | $20.00 | 184.00 | $3,680.00 |
| | | | Rupen Mehta | $20.00 | 184.00 | $3,680.00 |
| | | | Peter Baurouf | $25.00 | 184.00 | $4,600.00 |

| Note:Total number of consultant > 5 so there is a discount of 10% on offshore bulk | 1840.00 | $38,640.00 |
|---|---|---|
| SUB TOTAL | | |
| SALES TAX | | $0.00 |
| LESS DISCOUNT | | $3,864.00 |
| SHIPPING & HANDLING | | $0.00 |
| TOTAL DUE | | $34,776.00 |

Client Relationship Manager | Sunil Manjit Chhabra |

PLEASE NOTE OUR PAYMENT ADDRESS
Interra Information Technologies, Inc.
Dept CH 10794
Palatine, IL 60055-0794

If you have any questions with this Invoice contact: Michael Carroll, Assistant Controller at 408-451-1708

THANK YOU FOR YOUR BUSINESS!

Exhibit ___3___
Page __5__ of _6_

Page 1 of 1

04/30/2008 16:14 FAX

RECD JUL 17


INTERRA
Information Technologies

# INVOICE

Interra Information Technologies, Inc.
2001 Gateway Place, Suite # 670W
San Jose, CA 95110
Phone: (408) 451-1700
Fax: (408) 441-7495

INVOICE NO: **9378**
DATE: July 17, 2007

TO
Westbrook Technologies Inc
22 Summit Place
Branford, CT 06405

| INVOICE DATE | TERMS | P.O.NUMBER | BUSINESS UNIT | NOTES | MANAGER |
| --- | --- | --- | --- | --- | --- |
| | | | INTERRA IT | | Marshall Pincuns |
| 07/17/07 | NET-30 | Agreement | | | |

| PERIOD | LOCATION | PROJECT DESCRIPTION | NAME | RATE ($/HR) | HOURS | AMOUNT |
| --- | --- | --- | --- | --- | --- | --- |
| Jun-07 | India | Fortis SOA | Anand K Iyer | $20.00 | 168.00 | $3,360.00 |
| | | | Gouri Shankar | $25.00 | 168.00 | $4,200.00 |
| | | | Sehaj Arora | $20.00 | 168.00 | $3,360.00 |
| | | | Soumanli Jala | $20.00 | 168.00 | $3,360.00 |
| | | | Madhumita Das Sharma | $20.00 | 168.00 | $3,360.00 |
| | | | Devesh Tapan | $20.00 | 168.00 | $3,360.00 |
| | | | Ashwini Singh | $20.00 | 168.00 | $3,360.00 |
| | | | Gaurav Khanna | $20.00 | 168.00 | $3,360.00 |
| | | | Rupsa Mehra | $20.00 | 168.00 | $3,360.00 |
| | | | Peter Bernard | $25.00 | 168.00 | $4,200.00 |

| | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| Note:Total number of consultant > 5 so there is a discount of 10% on offshore rate | | | | | 1680.00 | $35,280.00 |
| SUB TOTAL | | | | | | $35,280.00 |
| | | | | | SALES TAX | $0.00 |
| | | | | | LESS: DISCOUNT | $3,528.00 |
| | | | | | SHIPPING & HANDLING | $0.00 |
| | | | | | TOTAL DUE | $31,752.00 |

Client Relationship Manager | Sumit Manjit Chhabra

**PLEASE NOTE OUR PAYMENT ADDRESS:**
Interra Information Technologies, Inc.
Dept CH 10794
Palatine, IL 60055-0794

If you have any questions with this invoice contact: Michael Carroll, Assistant Controller at 408-451-1708

THANK YOU FOR YOUR BUSINESS!

Exhibit ___3___
Page __4__ of __4__

Page 1 of 1

JS 44 (Rev. 12/07) (cand rev 1-16-08)

The JS 44 civil cover sheet and the information contained he... neither replace nor supplement the filing and service of plea... or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

Interra Information Technologies, Inc.

**DEFENDANTS**

Westbrook Technologies, Inc.

**(b)** County of Residence of First Listed Plaintiff Santa Clara County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Michael J. Ioannou
Ropers Majeski Kohn & Bentley
80 North First Street
San Jose, CA 95113

Attorneys (If Known)

Mark Garcia
Carroll Burdick & McDonough LLP
44 Montgomery Street, Suite 400
San Francisco, CA 94104

C08 02737 RS

*ADR*   *E-FILING*

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [X] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [X] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | **PERSONAL INJURY** [ ] 362 Personal Injury— | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Med. Malpractice | [ ] 625 Drug Related Seizure | 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury — | of Property 21 USC 881 | | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| & Enforcement of Judgment | Slander | [ ] 368 Asbestos Personal | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Injury Product | [ ] 650 Airline Regs. | [ ] 830 Patent | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | Liability | Liability | [ ] 660 Occupational | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| Student Loans | [ ] 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | [ ] 490 Cable/Sat TV |
| (Excl. Veterans) | [ ] 345 Marine Product | [ ] 370 Other Fraud | [ ] 690 Other | | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment | Liability | [ ] 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/ |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal | [ ] 710 Fair Labor Standards | [ ] 861 HIA (1395ff) | Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | Property Damage | Act | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge |
| [X] 190 Other Contract | Product Liability | [ ] 385 Property Damage | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | Product Liability | [ ] 730 Labor/Mgmt.Reporting | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | | & Disclosure Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | | [ ] 892 Economic Stabilization Act |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | [ ] 791 Empl. Ret. Inc. | [ ] 870 Taxes (U.S. Plaintiff | [ ] 894 Energy Allocation Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ | **Habeas Corpus:** | Security Act | or Defendant) | [ ] 895 Freedom of Information |
| [ ] 240 Torts to Land | Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party | Act |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 535 Death Penalty | | 26 USC 7609 | [ ] 900 Appeal of Fee |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities— | [ ] 540 Mandamus & Other | **IMMIGRATION** | | Determination |
| | Employment | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | Under Equal Access |
| | [ ] 446 Amer. w/Disabilities— | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus – | | to Justice |
| | Other | | Alien Detainee | | [ ] 950 Constitutionality of |
| | [ ] 440 Other Civil Rights | | [ ] 465 Other Immigration | | State Statutes |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [ ] 1 Original Proceeding
- [X] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Sections 1332, 1441, 1446

Brief description of cause:
Breach of Contract

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 252,906.31

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

- [ ] SAN FRANCISCO/OAKLAND
- [X] SAN JOSE

DATE May 30, 2008

SIGNATURE OF ATTORNEY OF RECORD